# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                                                                                        No. CR 94-732 LH

DAVID KEE MANN,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on remand from the United States Court of Appeals for the Tenth Circuit. *See United States v. David Kee Mann*, 145 F.3d 1347, 1998 WL 171845 (10th Cir. 1998) (unpublished disposition). In its order, the Tenth Circuit instructed this Court to explain its admission of certain testimony under Federal Rules of Evidence 403 and 414 and noted that "[w]ithout any reasoned elaboration by the district court we have no way of understanding the basis of [its] decision. . . . Instead, we require an on the record decision by the court explaining its reasoning in detail." *Id.* at *2 (quoting *United States v. Roberts*, 88 F.3d 872, 882 (10th Cir. 1996)). The Court has considered the parties' briefs filed on remand and finds, for the reasons stated below, that the Rule 414 evidence was properly admitted pursuant to Rule 403.

**I. Federal Rules of Evidence 413 and 414**

Federal Rules of Evidence 413 and 414 are companion rules. They were enacted by the same statute, share the same legislative history, and reflect the same legislative intent. *See United States v. Meacham*, 115 F.3d 1488, 1491-92 (10th Cir. 1997). Consequently, these two anomalous rules are often discussed in tandem and precedents set under one of these rules are generally considered relevant to the other. *See U.S. v. Enjady,* 134 F.3d 1427, 1431 (10th Cir. 1998) (relying on Rule 414 case law in analyzing Rule 413); *United States v. Castillo*, 140 F.3d 874, 880 (10th Cir. 1998) (analyzing Rule 414 based on Rule 413 precedents). Both rules allow into evidence prior bad sexual acts to prove a defendant's propensity to commit the charged crime. Propensity evidence has historically been banned because it creates the potential for a jury to convict a defendant for "who they are, rather than for what they have done." Mark A. Sheft, *Federal Rule of Evidence 413: A Dangerous New Frontier*, 33 AM.CRIM. L.REV. 57, 58 (1995).

Following their incorporation into the Federal Rules of Evidence in 1994, Rules 413 and 414 were repeatedly challenged on constitutional grounds. In *Enjady*, for example, the defendant was charged with one count of aggravated sexual abuse. 134 F.3d at 1429. Under Rule 413, the prosecution introduced the testimony of a witness, who stated that the defendant had raped her two years earlier. The defendant claimed that Rule 413 was unconstitutional because it denied him a fair trial guaranteed by his constitutional right to due process. *Id.* at 1430. The Tenth Circuit, not unsympathetic, stated: "We agree that Rule 413 raises a serious constitutional due process issue." *Id.* However, the *Enjady* court upheld the constitutionality of Rule 413 based on its finding that Rule 413 is subject to Rule 403 balancing. *Id.* at 1433. Rule 403 states that evidence is inadmissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Thus, the *Enjady* court reasoned that Rule 403 provides an adequate safeguard against admission of Rule 413 evidence deemed too prejudicial. 134 F.3d at 1433.

> The Tenth Circuit has adopted a totality-of-the-circumstances test for the Rule 403 analysis:
>
> Rule 403 balancing in the sexual assault context requires the court to consider: 1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the Government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.

*Id*. The Tenth Circuit has instructed courts "to 'liberally' admit evidence of prior uncharged sex offenses." *United States v. Meacham,* 115 F.3d 1488, 1492 (10th Cir. 1997) (applying Rule 414). In *United States v. Guardia,* the Tenth Circuit concluded that: "[if] Rule 413 evidence were always too prejudicial under 403, Rule 413 would never lead to the introduction of evidence. Therefore, Rule 413 only has effect if we interpret it in a way that leaves open the possibility of admission." 135 F.3d 1326, 1330 (10th Cir. 1998). These comments reflect judicial efforts to comply with Congressional will by adopting a presumption in favor of admitting evidence under Rules 413 and 414.

**II. Discussion**

In the instant matter the Defendant was charged with two counts of aggravated sexual abuse. This Court allowed the admission of testimony under Rules 403 and 414. The Court accepted the Government's proffer that "R.K." would credibly testify to having been sexually abused as a young

girl by the Defendant and that this evidence was relevant to the question whether the Defendant committed the indicted crimes. (R. at 4.) The prosecution's proffer was substantiated by R.K.'s subsequent testimony. (R. at 455-93.) Based on its *Enjady* analysis of the Government's proffer—and R.K.'s later testimony—the Court was satisfied that the prejudicial effect of R.K.'s testimony was neither unfair nor did it substantially outweigh its probative value.

The first element of the *Enjady* test is whether the prior similar sexual contact has been sufficiently proven. Prior similar acts must be established by "sufficient evidence." *Enjady,* 134 F.3d at 1433. Thus, the standard is one of "preponderance." *Id.* (quoting David Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 CHI.-KENT L.REV. 15, 19 (1994). In *Enjady* the district court denied the Defendant's request for a separate hearing to determine how likely it was that the prior act occurred. 134 F.3d at 1434. The court noted that the witness had filed a contemporaneous police report and was subject to cross-examination at trial. *Id.* The police officer that filed the witness's report also testified at trial. *Id.* Based on these factors, the *Enjady* court found that the prior act was sufficiently proven. *Id.*

Mr. Kee Mann argues that the prior acts were not sufficiently proven because R.K.'s statements were "significantly inconsistent." (*See* Def.'s Br. at 3.) Moreover, the Defendant asserts that R.K.'s inability to "get her story straight" made it impossible for the Government to formally charge him with any crime involving R.K. (*Id*.) Initially R.K. told the FBI that the Defendant did not sexually abuse her. Defendant suggests that R.K. later changed her story under duress and that her mother's testimony corroborates this fact. (*Id*.) Moreover, at trial Defense counsel sought to impeach R.K.'s credibility by showing that she exaggerated the quality of her high school grades. (R.

at 465-68.) Defendant argues that, given these "inconsistencies," the Government failed to meet its "preponderance" standard.

However, R.K.'s inability to initially provide a coherent and consistent story does not automatically render her testimony inadmissible under Rules 403 and 414. The Defendant is a Navajo medicine man who is a well-known, respected, and trusted elder within his community. This is evident in the trial record and pretrial motion hearing, both of which contains numerous references to Kee Mann as "Grandpa" even though he is not, strictly speaking, the grandfather of the victims or witnesses in this matter. R.K.'s mother considered Kee Mann to be a father-figure having lost her biological father as a girl. (R. at 416.) R.K., herself, generally addressed Kee Mann as "Grandpa" (R. at 458.) Moreover, R.K. was well aware of how well respected Kee Man was within her own community. (R. at 473.) In fact, she initially began working with Kee Mann as a young girl because she was interested in becoming a medicine woman. (R. at 460-61.) Mr. Kee Mann's position of prominence and respect in R.K.'s community, can hardly have made it easy to for her to have identified the Defendant as a pedophile.

Considering these circumstances, and the nature of the charges, R.K.'s failure to initially come forward and tell her story is understandable and does not undermine her credibility. Moreover, a close reading of the trial transcripts does not support Defendant's position that R.K.'s mother was somehow involved in forcing R.K. to acknowledge the accusations against the Defendant. At trial R.K.'s mother testified that Social Services encouraged her to assist the police, FBI, or other authorities in their investigation. In reply to defense counsel's question, R.K.'s mother gave an affirmative response to counsel's suggestion that Social Services stated that it would keep her from seeing her children unless she cooperated. (R. at 439.) However, upon being directly asked whether

Social Services had required a *quid pro quo*, R.K.'s mother answered in the negative, and stated that her children were only going to be kept overnight. These responses do not establish that R.K.'s mother was coerced, as Defendant asserts, into contributing to the creation of a false claim. (R. at 439.) Moreover, R.K.'s mother testified that she did not instruct the children on what to say about Mr. Kee Mann. (R. at 440.) Additionally, although Defense counsel did show that R.K. had provided a slightly inflated description of her high school grades, this inconsistency is neither significant nor relevant to the Court's evaluation of R.K.'s veracity. The Court found R.K. to be a credible and believable witness and is satisfied that the Defendant's prior sexual contact with R.K. was sufficiently proven.

The second element of the *Enjady* test is how probative the evidence is of the material fact it is admitted to prove. The degree of similarity between the prior acts and the act charged is relevant to determining probative value. *See Guardia,* 135 F.3d at 1331 (citing *United States v. Edwards*, 69 F.3d 419, 436 (10th Cir. 1995)). In this instance, the Defendant was charged with two counts of aggravated sexual abuse against K.C. and S.Y., both young great-nieces of the Defendant. R.K. is also Kee Mann's great-niece. (R. at 269-70, 416, 726; Tr. of Mot. Hr'g, November 11, 1995, at 74, 118.) Moreover, all three of these alleged victims lived on or regularly visited Kee Mann's property during the relevant time period. R.K. and K.C., who are sisters, lived on Kee Mann's property at the time they were allegedly abused. (R. at 635-637; Mot. Hr'g at 74.) S.Y. was also within close physical proximity to Kee Mann during the time of her alleged abuse. Although she did not live on the Kee Mann property, S.Y. regularly played near the Defendant's residence, which was near her grandmother's house. (Mot. Hr'g at 184-185.) R.K. testified that Kee Mann began to sexually abuse her as a child, at the age of six or seven, and that this abuse continued into her thirteenth year. (R.

at 461-462.) The alleged victims of the charged crimes were approximately the same age when they were abused. The Government asserted that R.K.'s testimony was offered to demonstrate the Defendant's propensity to sexually abuse his young great nieces. Moreover, he was charged with having vaginal intercourse with K.C. and S.Y.; R.K. testified to similar abuse. Given these similarities between the charged and previous acts, the probative value of R.K.'s testimony is not negligible, as the Defendant asserts, but substantial. (*See* Def.'s Br. at 4.)

Alternatively, Defendant suggests that R.K.'s testimony was not probative because FBI Agent Greg Calles "admittedly asked inappropriately leading questions" of R.K. (*See* Def.'s Br. at 4.) Again, a close reading of the trial transcripts does not support this assertion. Calles testified to knowing what constitutes a leading, versus a non-leading question. (R. at 647.) Calles also stated that he was aware of the danger of asking leading questions of alleged child sexual abuse victims. (R. at 631.) At no point during direct or cross-examination was Calles asked whether he used inappropriately leading questions in his interview with R.K. (R. 629-69.) Similarly, Calles never admitted to having asked R.K. inappropriately leading questions. Thus, Calles' answers did not reduce the probative value of R.K.'s testimony.

The third element of the *Enjady* test asks how serious is the dispute over the material fact the evidence is admitted to prove. The Court agrees with Mr. Kee Mann that R.K.'s allegations were seriously disputed at trial. In fact, throughout the course of this action the Defendant repeatedly denied the charges against him. At trial defense counsel offered to introduce numerous character witnesses on Defendant's behalf. (R. at 10.) However, the Court will not exclude R.K.'s testimony based solely on this factor.

The fourth element of the *Enjady* test is whether the Government can avail itself of any less prejudicial evidence. As the drafters of Rule 413 and 414 observed, in sexual assault cases there is often a lack of admissible evidence. 140 CONG. REC. S1299001-01, Sl2990 (1994). As a result, sexual assault cases are often reduced to "unresolvable swearing matches." *Id.* In this case R.K.'s testimony was essential to the prosecution's case because:

> It tended to show that (1) girls around the ages of the charged offense victims were within his [Mr. Kee Mann's] zone of sexual interest, (2) he wanted to engage in sexual acts, including vaginal intercourse, with such girls, (3) he regarded girls in his family, and specifically daughters and nieces, as suitable objects of his sexual aggression, and (4) he lacked effective inhibitions against acting on these inclinations.

(Govt.'s Br. at 11.) There is no indication that the Government had access to any less prejudicial evidence on these issues that would serve as an adequate substitute. Therefore, the Court is satisfied that the Government was not able to avail itself of any less prejudicial evidence.

The final element of the *Enjady* test concerns probative dangers. As the record bears out, the admission of R.K.'s testimony created no probative dangers at trial. The jury's verdict was split: It acquitted the Defendant on the charges involving K.C., but convicted the Defendant on the charges involving S.Y. Consequently, it is clear the Rule 414 evidence did not confuse the jury. Moreover, the jury did not misuse the Rule 414 evidence to punish the Defendant because of R.K.'s allegations. Thus, based on the *Enjady* test, R.K.'s testimony was properly admitted.

Defendant argues in the alternative that propensity evidence is inherently too prejudicial. (*See* Def.'s Br. at 4.) Consequently, Defendant suggests R.K.'s testimony should not have been admitted. However, to completely bar the admission of propensity evidence, as Defendant appears to suggest, would disregard the intent of Federal Rule of Evidence 414 and the command of the Tenth Circuit.

*See Guardia*, 135 F.3d at 1330. While the Court agrees that it "must be particularly wary of propensity evidence," it is just as wary of substituting judicial concerns for Congressional will. It was for these reasons that this Court found R.K.'s testimony admissible under Federal Rules of Evidence 414 and 403.

**IT IS SO ORDERED**.

_____
**UNITED STATES DISTRICT JUDGE**